483 P.2d 60

**STATE of Arizona, Appellee,**

v.

**Robert Henry DREVIER, Appellant.**

**I CA–CR 239.**

Court of Appeals of Arizona,
Division 1.
April 5, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HOWARD, Judge.

This is an appeal from the Superior Court of Maricopa County, Honorable Edwin Thurston presiding, in which appellant was convicted of passing a forged check in violation of A.R.S. § 13–421.

The facts are that in 1968, appellant, Drevier, went to the service station of one Lowery to cash a check and also to pay something on a repair bill he owed at the station. Appellant handed Lowery a personal check naming appellant as payee and drawn on the account of and purportedly signed by one Franzen. The check was for the amount of $50. Appellant endorsed the instrument, Lowery cashed it, gave appellant $25 cash and credited appellant's account with the sum of $25.

Sometime prior to this event, one of appellant's co-workers, Franzen, had reported to his bank that he had lost his checkbook. As a result of this report, payment on the particular check in question was refused. Some time subsequent to this chain of events, a criminal complaint was sworn out and appellant was charged with passing a forged instrument. .

The jury arrived at a verdict of guilty. Sentencing was then postponed by the judge until such time as appellant was released from Federal custody which he happened to be under at that time.

Appellant's assignments of error will be considered in the order they are set out in his brief.

■ Appellant claims the trial court erred in the giving of an instruction on circumstantial evidence because it failed to point out a qualitative difference between direct and circumstantial evidence.

In the recent Arizona Supreme Court case of State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970), it was held:

"It is the opinion of this court that the probative value of direct and circumstantial evidence are intrinsically similar; therefore, there is no logically sound reason for drawing a distinction as to the weight to be assigned each. * * * We are aware that as a result of this holding it is no longer necessary to instruct the jury regarding the 'reasonable hypothesis' theory of circumstantial evidence where the jury is properly instructed as to 'reasonable doubt.' A proper instruction on 'reasonable doubt' as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further is to invite the confusion of semantics." At 846.

The aforementioned language clearly disposes of any need for the court to distinguish between direct and circumstantial evidence and the failure of the instruction in question to do so is not erroneous.

Appellant's second assignment of error is that six exhibits were entered into evidence, over objection, without proper foundation.

At one point during the trial, the prosecution called an expert witness in the field of handwriting to testify. The witness used the method of comparing writing on

the forged instrument with six standards which were allegedly in the victim's, Franzen's, handwriting. The purpose of this method was to show that Franzen did not write nor sign the forged instrument. Appellant claims the six checks used as standards were entered into evidence without the proper foundation or establishing that the handwriting was in fact, that of Franzen.

It is generally held that it is up to the trial court to determine the genuineness of a standard of handwriting and that the court's ruling in this respect is conclusive, unless it is shown that the ruling was wholly without evidentiary foundation. Citizens' Bank and Trust Co. v. Allen, 43 F.2d 549 (4th Cir. 1930); Omohundro v. State, 172 Tenn. 48, 109 S.W.2d 1159 (1937); Brantley v. State, 84 Fla. 649, 94 So. 678 (1922); State v. Thompson, 80 Me. 194, 13 A. 892 (1888).

In the case *sub judice*, the six standards were introduced using the following questioning:

"Q. Now, Mr. Franzen, I show you what's been marked as State's Exhibit 2 for identification which also purports to be a check and ask if you can identify it?

A. Yes, that's my check.

Q. And when was that particular check written by you?

A. On April 17th of '68.

Q. And what's the number on that check?

A. 1015.

Q. And I show you what's been marked as State's Exhibit 3 for identification and ask you, which purports to be a check, can you identify that?

A. Yes, that's my check.

Q. When was it written?

A. April 1969.

Q. I show you what's been marked as State's Exhibit 4 for identification and which purports to be a check and ask if you can identify that?

A. Yes, this is my check.

Q. I show you what's been marked as State's 5 for identification and ask you if you can identify that?

A. Yes, that's my check.

Q. I show you what's been marked as State's Exhibit 6 for identification and also ask you if you can identify that?

A. Yes, that's my check.

Q. And I show you what's been marked as State's Exhibit 7 for identification and ask you if you can identify that?

A. Yes, that's my check."

■ We feel that implicit in the answers of Mr. Franzen, "Yes, that's my check", is the fact that he did write and sign the checks. Therefore, we do not see that the trial judge abused his discretion in regard to admitting the checks into evidence for lack of proper foundation.

■ The appellant alleges as his third error that the trial judge wrongfully postponed his sentencing until such time as he was released from Federal custody.

Rule 335, Rules of Criminal Procedure, 17 A.R.S., provides:

"If cause sufficient under Rule 332 is not alleged, or having been alleged is not proved, or has ceased to exist, the court may either pronounce sentence immediately or postpone pronouncement of sentence to a future certain day or postpone pronouncement for a reasonable time."

In Smith v. Hooey, 393 U.S. 374, 89 S. Ct. 575, 21 L.Ed.2d 607 (1969), the U. S. Supreme Court stated that a speedy trial is essential to " * * * minimize anxiety and concern accompanying public accusation * * * " We believe such reasoning is also applicable to sentencing. In State v. Rhodes, 104 Ariz. 451, 454 P.2d 993 (1969), the Supreme Court held that "a reasonable time" meant exactly that and absent a statutory reason for doing otherwise, a defendant must be sentenced within a reasonable time. It was also held that

the sentence may run concurrently with one being served in another state.

Under the dictates of *Rhodes*, we see no reason for postponement of sentence.

Judgment is affirmed in all respects and the case is remanded to the trial court for purposes of sentencing.

KRUCKER, C. J., and JAMES D. HATHAWAY, J., concur.

NOTE: This case was decided by the Judges of Division Two as authorized by ARS § 12–120 subsec. E.